IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY R. MECHELLI,<br>    Plaintiff, | )<br>)<br>)   Civil Action No. 14-359 |
| v. | )<br>)   Magistrate Judge Robert C. Mitchell |
| KEN FERREE, DEREK STITT, THE CITY<br>OF MCKEESPORT and UNKNOWN<br>MCKEESPORT POLICE OFFICERS,<br>    Defendants. | )<br>)<br>)<br>) |

## **MEMORANDUM OPINION**

ROBERT C. MITCHELL, United States Magistrate Judge

### I. INTRODUCTION

Presently before the Court is Defendants Derek Stitt and the City of McKeesport's ("Defendants") Motion to Dismiss Plaintiffs' Second Amended Complaint [ECF No. 27] pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendant's motion is denied.

### II. BACKGROUND

This case generally arises out of Defendants' alleged violations of Plaintiff's constitutional rights in connection with Plaintiff's arrest and detention. Plaintiff, Mary Mechelli, is fifty-four years old and a resident of McKeesport, Pennsylvania. Defendant Ken Ferree is the dog catcher of McKeesport. Plaintiff considers herself an animal rights activist and a member of People for the Ethical Treatment of Animals ("PETA"). Plaintiff alleges that on multiple occasions, Defendant Ferree, acting as McKeesport's dog catcher, threatened to shoot Plaintiff's dogs. Plaintiff lobbied to the former McKeesport mayor, James Brewster, to terminate Defendant Ferree for animal cruelty. Defendant Ferree was terminated, but was subsequently

1

reinstated by Brewster's successor, Michael Cherpko.  In June 2013, Plaintiff along with others, protested the Ferree Kennels for alleged animal cruelty activity and on the basis that Defendant Ferree shoots dogs.  At the protest, Plaintiff and Defendant Ferree engaged in a verbal confrontation.

On or about August 1, 2013, Plaintiff returned a phone call from McKeesport Detective Kacznski regarding stolen cars and home burglaries in the area.   That same day, Plaintiff alleges that two McKeesport officers came to her house and let her two dogs out of a secured area.  While one of the dogs was not recovered, the next morning, Defendant Ferree contacted Plaintiff to inform her that he had caught her other dog and that she was to immediately come to the kennel to retrieve her dog or the dog would be shot.  After this conversation, Plaintiff went to the home of the mayor of White Oak, a neighboring municipality, Ina Jean Marton and Marton advised Plaintiff to go to the kennel and retrieve her dog because she believed Defendant Ferree would kill it.  Plaintiff immediately went to the kennels.  While on the way, Plaintiff received a phone call from Marton who urged her to hurry to the kennel because she believed that Defendant Ferree was going to kill the dog.  Plaintiff arrived at the kennel and met Defendant Ferree outside and remained on the phone with Marton. Defendant Ferree informed Plaintiff that her dog was inside and Plaintiff handed Ferree $140.00 to retrieve the dog.  Defendant Ferree directed Plaintiff into a lobby area inside of the kennel.  Plaintiff remained on the phone with Marton, and Marton asked to speak with Defendant Ferree but he refused.  Defendant Ferree then guided Plaintiff to a set of stairs and pushed her in the back down the stairs.  Plaintiff lost control of her phone and fell to the ground.  Defendant Ferree then kicked Plaintiff in the head, the back of the arms and ribs approximately twenty times, pulled her hair and punched her in the face, lip and jaw.  Defendant Ferree also cursed at Plaintiff and used words derogatory to her

gender.  Plaintiff claims that after Defendant Ferree beat her, he then handcuffed her and contacted the police.

McKeesport Police Officers Stitt, Houy and approximately five other unknown officers arrived at the kennel, and Defendant Ferree informed the officers that Plaintiff had resisted arrest.  Plaintiff was transported to the McKeesport Police Department where she was then told there was a warrant out for her arrest for various theft by deception charges.  Therefore, Plaintiff contends that Defendant Ferree was officially working with the McKeesport Police Department to apprehend Plaintiff for this warrant.  When she was in custody at the police department, she lost control of her bladder and Defendant Ferree and other officers made fun of her.  Plaintiff also had visible injuries to her face and requested medical attention, but it was not provided.  A few hours later, Allegheny County detectives arrived at the McKeesport Police Station to take Plaintiff to Allegheny County Jail but determined that she needed medical attention and took her to Mercy Hospital for treatment.

At Mercy Hospital, Plaintiff was diagnosed with a concussion and trauma to her back, shoulder, face and legs.  After she received medical attention, she was then taken to Allegheny County Jail and released the same day.  The next day, she sought additional medical attention and was diagnosed with a chest contusion, concussion and post-concussion syndrome.  She suffered dizziness, fatigue, pain in her ribs and swelling.

Plaintiff was charged with disorderly conduct for the occurrence with Defendant Ferree at the kennels, and a preliminary hearing on the matter was held on December 10, 2013.  Defendant Ferree did not testify at or attend the preliminary hearing.  At the hearing, Defendant Officer Stitt testified that he was summoned to the kennel because he was informed that there would be a warrant suspect there.  At the conclusion of the preliminary hearing, the disorderly conduct

charges were dismissed.

Plaintiff brought suit against Defendant Ferree, Officer Stitt, the City of McKeesport and Unknown McKeesport Police Officers. Plaintiff asserts several claims against Defendant Ferree under 42 U.S.C. § 1983 including: First Amendment retaliation (Count I); excessive force under the Fourth Amendment (Count II); cruel and unusual punishment under the Eighth Amendment (Count III); Intentional Infliction of Emotional Distress (Count V); False Arrest (Count VI); Malicious Prosecution (Count VII); and False Imprisonment (Count VIII). Additionally, Plaintiff asserts claims against Officer Stitt, the City of McKeesport and Unknown McKeesport Police Officers under 42 U.S.C. § 1983 including a claim for cruel and unusual punishment under the Eighth Amendment (Count III) and a *Monell* claim regarding an alleged express policy and/or practice proximately causing constitutional injury to Plaintiff (Count IV).

Officer Stitt and the City of McKeesport ("Defendants") have moved to dismiss the claims against them for cruel and unusual punishment in violation of the Eighth Amendment and a *Monell* claim for an express policy or custom that caused Plaintiff constitutional injury (Counts III and IV). Defendants generally argue that Plaintiff's Eighth Amendment claim should be dismissed because she has not pleaded sufficient facts to establish that these Defendants were deliberately indifferent to any serious medical need, and Plaintiff's *Monell* claim should be dismissed because Plaintiff has not pleaded any facts tending to show a policy or custom caused a violation of her constitutional rights.

### III. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff asserts claims under the First, Fourth and Eighth Amendments and under 42 U.S.C. § 1983. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. Additionally,

all parties have consented to jurisdiction before a United States Magistrate Judge, *see* Def. Derek Stitt and the City of McKeesport's Consent to Magistrate Jurisdiction [ECF No. 30]; Def. Ken Ferree's Consent to Magistrate Jurisdiction [ECF No. 31]; Pl.'s Consent to Magistrate Jurisdiction [ECF No. 33]; therefore, the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

## IV. STANDARD OF REVIEW

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561 (citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations omitted). A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

## V. DISCUSSION

As Defendants move to dismiss both the Eighth Amendment and *Monell* claims, each claim will be addressed in turn.

a. <u>Plaintiff's Eighth Amendment Cruel and Unusual Punishment Claim</u>

Plaintiff alleges that Defendants, acting under color of law, held Plaintiff against her will at the kennel and at the McKeesport Police station, that they did not provide her with reasonable medical care for obvious physical injuries and urine soaked clothes, and that when the Allegheny County Officers arrived, they took Plaintiff to receive medical attention. *See* Sec. Am. Compl. [ECF No. 26] at ¶¶ 97-99.

First, Defendants move to dismiss this claim and argue that Plaintiffs allegations fail to implicate rights under the Eighth Amendment, as Plaintiff was a pretrial detainee, and such cases are properly analyzed under the due process clause of the Fourteenth Amendment. Defs.' Br. in Supp. of Mot. to Dismiss [ECF No. 28] at 5 (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239 (1983)).

While Defendants are correct that Plaintiff's appropriate avenue for her constitutional violation claim for failure to receive medical treatment and confinement conditions is through the Fourteenth Amendment, because "[p]leadings must be construed so as to do justice[,]" the Court will consider Plaintiff's claim as alleging a Fourteenth Amendment violation and will not dismiss this claim for this mistake. Fed. R. Civ. P. 8(e).

Defendants next argue that Plaintiff cannot state a claim for a Fourteenth Amendment violation because she has not pleaded sufficient facts to establish that Defendants were deliberately indifferent to any serious medical need, and should therefore be dismissed.

Section 1983 "is not itself a source of substantive rights," but rather provides "a

6

mechanism for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.4 (1979). Plaintiff alleges that her constitutional rights under the Fourteenth Amendment due process clause have been violated as a pretrial detainee. As applied here, the Fourteenth Amendment protects against the deprivation of liberty without due process of the law, and in the case of a pretrial detainee, prohibits punishment before a determination of that person's guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). The "Due Process Clause provides pretrial detainees with at least as much protection as is afforded to prisoners raising denial-of-medical-treatment claims under the Eighth Amendment." *Thrower v. Alvies*, 425 F.App'x 102, 104 (3d Cir. 2011) (citing *Natale v. Camden Cnty. Corr. Facility*, 328 F.3d 575, 581-82 (3d Cir. 2003)). While a pretrial detainee is not afforded protection under the Eighth Amendment, a claim "of inadequate medical care is evaluated under the same standard as a convicted prisoner's Eighth Amendment claims of inadequate medical care." *Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (citing *Natale*, 318 F.3d at 581). The standard to be applied in these cases is whether a prison official was deliberately indifferent to "serious medical needs" of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Therefore, a plaintiff must allege facts that demonstrate two elements to state a claim for failure to receive medical care under the Fourteenth Amendment: (1) a serious medical need; and (2) the prison official's deliberate indifference.

A prisoner has a serious medical need requiring medical attention, where "it has been diagnosed by a physician as requiring treatment, is easily recognizable by a lay person, or by 'reference to the effect of denying the particular treatment.'" *Imhoff v. Temas*, 2014 WL 7070721, at *6, --- F.Supp.3d ---, --- (W.D.Pa. Dec. 12, 2014) (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). Additionally, a serious medical

need may also be identified where there is "unnecessary and wanton infliction of pain," or where "denial or delay causes an inmate to suffer a life-long handicap or permanent loss[.]" *Id*. (citations omitted).

In determining whether an official was deliberately indifferent to a pretrial detainee's medical needs, the standard is whether the prison official denies "reasonable requests for medical treatment . . . and such denial exposes the inmate "to undue suffering or the threat of tangible residual injury.'" *Monmouth Cnty. Corr. Inst. Inmates*, 834 F.2d at 347 (3d Cir. 1987) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)). Thus, a prison official's constitutional obligations are not relieved if the prisoner ultimately receives care at some point; it is whether the denial of medical care causes the detainee to unduly suffer or threatens residual injury. *Imhoff*, 2014 WL 7070721, at *7, --- F.Supp.3d at --- ("deliberate indifference does not require a showing of complete failure to provide care[.]").

Here, Plaintiff has sufficiently pleaded that she suffered a serious medical need, as the trauma to her face was easily recognized by the Allegheny County detectives who immediately took her to Mercy Hospital to receive treatment. She in fact asked for medical treatment and was denied by the McKeesport police officers. Additionally, she has sufficiently pleaded that she suffered an unnecessary and wanton infliction of pain by not receiving adequate treatment after being pushed down a flight of stairs, kicked in the head, back of the arms and ribs, punched in the face, jaw and lip and had her hair pulled. While Defendants argue that a serious medical need is only met where the Plaintiff can show a lifelong handicap or permanent loss, the Court does not agree. As here, Plaintiff has sufficiently pleaded that her injuries were easily recognizable and she unnecessarily suffered more than she would have had she received treatment. Therefore, the Court finds that Plaintiff has pleaded sufficient facts demonstrating a

serious medical need.

As to the second element, deliberate indifference of prison officials, the Court also finds that Plaintiff has sufficiently pleaded facts to support this element. The McKeesport police officers denied medical treatment for Plaintiff's obvious injuries, and she did not receive treatment until hours later when Allegheny County detectives determined she needed treatment and took her to Mercy Hospital. This subjected Plaintiff to undue suffering. Additionally, there was a serious threat of tangible residual injury for the delayed medical treatment, as she suffered a concussion which is an obvious traumatic brain injury. The fact that she also suffered an episode of incontinence in addition to the physical injuries and the police officers and Defendant Ferree ridiculed her adequately establishes that the police officers were deliberately indifferent to her serious medical needs.

Accordingly, Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim is denied.

    b. <u>42 U.S.C. § 1983 Municipal Liability under *Monell*</u>

Generally, a municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000). A plaintiff must show that a violation of her constitutional rights was caused by "either a policy or custom of the municipality." *Berg*, 219 F.3d at 275 (citations omitted). A "policy" is made when "a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. . . . Customs are practices of state officials . . . so permanently and well settled as to virtually constitute law." *Id.* (citations and quotation marks omitted). After a plaintiff demonstrates a policy or custom, she must then

9

"demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). If the policy or custom is not facially unconstitutional, causation "can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" *Berg*, 219 F.3d at 276 (quoting *Bd. of Comm'rs of Bryan Cnty.,* 520 U.S. at 407) (additional citations omitted).

If a plaintiff alleges that a failure to train, supervise or discipline municipal employees caused a constitutional violation, it will only be considered deliberate indifference "where the failure has caused a pattern of violations." *Id.* In this instance, the plaintiff must demonstrate that the municipality's custom pairs with causation, "i.e., that, policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990). Thus, the plaintiff must demonstrate that the "responsible policymakers were aware of the injury, and of alternatives to prevent it, but either deliberately chose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction in this regard." *Lewis v. City of Philadelphia*, 2014 WL 1370177, at *4 (E.D.Pa. Apr. 8, 2014) (citing *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1064 (3d Cir. 1991)). "If the [municipality] is shown to have tolerated known misconduct by police officers, the issue [of] whether the City's inaction contributed to the individual officers' decision to arrest the plaintiff[] unlawfully . . . is a question of fact for the juror." *Bielevicz*, 915 F.2d at 850.

Here, Plaintiff alleges that the City of McKeesport failed to properly train its officers because it allows Defendant Ferree, the town dog catcher, to work with officers on ongoing

police work including the apprehending and arresting of citizens where Ferree is not a police officer with the City. Additionally, Plaintiff contends that there was a custom of the police officers to work with Defendant Ferree with ongoing criminal investigations.

Defendants move to dismiss these claims by arguing that these allegations are insufficient to state a Section 1983 claim against the City of McKeesport, as they are conclusory, only allege a single occurrence, and is not sufficient to demonstrate that a municipal custom existed. *See* Defs.' Br. in Supp. of Mot. to Dismiss [ECF No. 28] at 8-10. (citing *Young v. City of Allentown*, 882 F.Supp. 1490, 1494 (E.D.Pa. 1995)).

While Defendants are correct that an unconstitutional municipal custom requires more than a showing of a single occurrence, the Court finds that Plaintiff has adequately alleged a long standing custom of allowing Defendant Ferree, the McKeesport dog catcher, to assist the police in their official duties by vesting him with police authority to apprehend and arrest citizens. Plaintiff does not just claim that one officer violated her constitutional rights under the Fourth and Fourteenth Amendments, but rather that an entire department allowed the town dog catcher to effectuate her arrest and permitted a person not vested with police authority to be involved in ongoing criminal investigations. The police department's acquiescence is palpable. Defendant Ferree was in no way involved in the crimes allegedly committed by Plaintiff, the police department permitted Defendant Ferree to summon Plaintiff to the kennels to be arrested and arrest Plaintiff by handcuffing her. Defendant Ferree told police when they arrived at the kennel that Plaintiff was "**resisting arrest**" which at least indicates that Defendant Ferree believed he was working on behalf of the police department and at worst indicates that he was explicitly granted the authority from the department to arrest Plaintiff. The police officers did nothing to correct or curtail Defendant Ferree's actions. Moreover, Defendant Ferree traveled back to the

11

police station with the officers after Plaintiff's arrest and fraternized with officers as Plaintiff was in the holding cell in Plaintiff's plain view. This behavior demonstrates a systemic custom that the police department allows the city's dog catcher to assist them in their duties as police officers, and by doing so violated her constitutional rights under the Fourth and Fourteenth Amendments. Additionally, Plaintiff has stated a claim that the City of McKeesport violated her constitutional rights under the Fourth and Fourteenth Amendments by failing to train, supervise or discipline its officers for permitting non-police officers to effectuate arrests in ongoing criminal investigations. The Court finds that Plaintiff has alleged adequate facts that show that the City of McKeesport acted with "deliberate indifference to the rights of persons with whom the police come into contact" by alleging that the police department allowed the town dog catcher to arrest citizens accused of crimes and engaged in behavior that the public has only vested in its police officers.

Accordingly, Defendant's motion to dismiss Plaintiff's claim under *Monell* is denied.

## VI. CONCLUSION

As set forth above, Defendants' motion to dismiss Plaintiff's complaint is denied. An appropriate Order follows.

Dated: March 31, 2015

                                          By the Court,

                                          /s Robert C. Mitchell
                                          ROBERT C. MITCHELL
                                          United States Magistrate Judge

cc:    *Counsel for Plaintiff*
        Erik M. Yurkovich, Esquire

*Counsel for Defendant Ken Ferree*
Carl B. Zacharia, Esquire

*Counsel for Defendants Derek Stitt and the City of McKeesport*
Thomas P. McGinnis, Esquire
Jeffrey D. Truitt, Esquire
Karin M. Romano, Esquire

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY R. MECHELLI,<br>    Plaintiff,<br><br>    v.<br><br>KEN FERREE, DEREK STITT, THE CITY<br>OF MCKEESPORT and UNKNOWN<br>MCKEESPORT POLICE OFFICERS,<br>    Defendants. | Civil Action No. 14-359<br><br>Magistrate Judge Robert C. Mitchell |

## **O R D E R**

AND NOW, this 31st day of March, 2015, after consideration of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 27], IT IS HEREBY ORDERED that said motion is DENIED.  Defendants are to file an Answer within twenty-one (21) days of this Order.

By the Court,

/s Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

cc:    *Counsel for Plaintiff*
       Erik M. Yurkovich, Esquire

       *Counsel for Defendant Ken Ferree*
       Carl B. Zacharia, Esquire

       *Counsel for Defendants Derek Stitt and the City of McKeesport*
       Thomas P. McGinnis, Esquire
       Jeffrey D. Truitt, Esquire
       Karin M. Romano, Esquire